UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNKNOWN HEIRS, DEVISEES, LEGATEES, | ) |
| SUCCESSORS, EXECUTORS, ADMINISTRATORS, | ) |
| PERSONAL REPRESENTATIVES, GUARDIANS, | ) Case No.1:19-cv-3923 |
| TRUSTEES, RECEIVERS, GRANTEES AND | ) |
| LESSEES OF DANIEL V. CAZARES, DECEASED; | ) |
| UNKNOWN HEIRS, DEVISEES, LEGATEES, | ) |
| SUCCESSORS, EXECUTORS, ADMINISTRATORS, | ) |
| PERSONAL REPRESENTATIVES, GUARDIANS, | ) |
| TRUSTEES, RECEIVERS, GRANTEES AND | ) |
| LESSEES OF JULIA CAZARES, DECEASED; | ) |
| ANNA SCOTT; and UNKNOWN OWNERS & | ) |
| NON- RECORD CLAIMANTS, | ) |
| | ) |
| Defendants. | ) |

## C O M P L A I N T

The Plaintiff, United States of America, on behalf of its agency, Secretary of Housing

and Urban Development, its successors and assigns, by Josh J. Minkler, United States Attorney

for the Southern District of Indiana, hereby states:

## JURISDICTION/VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1345 and 12 U.S.C. § 1715, *et seq*.,

and venue is proper in this Court.

## COUNT I (Action for Debt)

As claim against the Borrowers, Daniel V. Cazares (deceased) and Julia Cazares

(deceased), the Plaintiff asserts:

1

1.      On or about January 26, 1998, the Borrowers, Daniel V. Cazares (deceased) and Julia Cazares (deceased) executed and delivered to Transamerica HomeFirst, Inc., an Adjustable Rate Note, which Note is attached hereto as Exhibit A.

2.      Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, Daniel V. Cazares (deceased) and Julia Cazares (deceased), executed and delivered to Transamerica HomeFirst, Inc., a mortgage and an Adjustable Rate Home Equity Conversion Mortgage, attached hereto as Exhibit B, recorded on February 17, 1998 in Instrument #1998-0023667.

3.      On or about January 26, 1998, the Borrowers, Daniel V. Cazares (deceased) and Julia Cazares (deceased) executed and delivered to Transamerica HomeFirst, Inc., an Adjustable Rate Second Note, which Note is attached hereto as Exhibit C.

4.      Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, Daniel V. Cazares (deceased) and Julia Cazares (deceased), executed and delivered to the Secretary of Housing & Urban Development, a second mortgage and Home Equity Conversion Mortgage, attached hereto as Exhibit D, recorded on February 17, 1998 in Instrument #1998-0023668.

5.      On or about September 9, 2008, Financial Freedom Senior Funding Corporation, successor by merger with HomeFirst, Inc., (formerly known as Transamerica HomeFirst, Inc.), conveyed and assigned its interest in the Note and Mortgage to the Secretary of Housing & Urban Development, attached hereto as Exhibit E, recorded on October 7, 2008, as Instrument #2008-0116820.

6.      The Borrower, Daniel V. Cazares, died on March 18, 2007, leaving any interest

that he had in the subject real estate to his heirs at law. A copy his obituary is attached hereto as Exhibit F.

7.     The Borrower, Julia Cazares, died on September 30, 2015, leaving any interest that she had in the subject real estate to her heirs at law. A copy her Death Certificate is attached hereto as Exhibit G.

8.     The Borrowers (deceased) defaulted under the terms of the Adjustable Rate Note and Home Equity Conversion Mortgage, and/or otherwise defaulted in regard to their obligations to Plaintiff under the provisions of the documents attached as Exhibits A, B, C, D, and E.

9.     All conditions precedent to the assertion of this cause of action against the said Borrowers, Daniel V. Cazares (deceased) and Julia Cazares (deceased), have been satisfied and/or occurred.

10.     As of August 22, 2019, the balance of the indebtedness of the Borrowers and the subsequent interest accrual to the date of judgment is the following with respect to the attached debt instruments:

| **Designation** | **Balance** | **Per Diem Interest Accrual** |
| --- | --- | --- |
| Exhibits A and B | $81,317.19 | $8.09 |

A Statement of Account is attached hereto as Exhibit H.

WHEREFORE, Plaintiff respectfully prays that the Court:

A.     Enter judgment **in rem** in favor of the Plaintiff and against all Defendants, unknown heirs, devisees, legatees, successors, executors, administrators, personal representatives, guardians, trustees, receivers, grantees and lessees of Daniel V. Cazares (deceased); and the unknown heirs, devisees, legatees, successors, executors, administrators,

personal representatives, guardians, trustees, receivers, grantees and lessees of Julia Cazares (deceased); Anna Scott; and unknown owners and non-record claimants, in the principal amount of $28,875.91, together with interest thereon through August 22, 2019, in the amount of $36,224.77, plus service charge in the amount of $9,100.00, plus MIP in the amount of $7,116.51, plus interest at the rate of $8.09 per day from and after August 23, 2019, until the date of entry of judgment, plus such further costs and expenses as may be incurred to the date of judgment, and all other costs herein without relief from valuation or appraisement laws;

B.      Provide the Plaintiff with such other and further relief as is just and proper in the premises.

### COUNT II (Action for Mortgage Foreclosure)

As its claim against the Defendants, unknown heirs, devisees, legatees, successors, executors, administrators, personal representatives, guardians, trustees, receivers, grantees and lessees of Daniel V. Cazares (deceased); the unknown heirs, devisees, legatees, successors, executors, administrators, personal representatives, guardians, trustees, receivers, grantees and lessees of Julia Cazares (deceased); Anna Scott; and unknown owners and non-record claimants, the Plaintiff asserts:

11.     To secure the indebtedness evidenced by Exhibit A, the Borrowers, Daniel V. Cazares (deceased) and Julia Cazares (deceased), executed and delivered to Transamerica HomeFirst, Inc., a mortgage and an Adjustable Rate Home Equity Conversion Mortgage, attached hereto as Exhibit B, recorded on February 17, 1998 in Instrument #1998-0023667, on certain real estate described as follows:

**LOT 147 IN BROOKHAVEN, SECOND SECTION, AN ADDITION TO THE TOWN OF LAWRENCE, THE PLAT OF WHICH IS RECORDED IN PLAT**

**BOOK 28, PAGES 453 AND 454, IN THE OFFICE OF THE RECORDER OF MARION COUNTY, INDIANA.**

**Commonly known as:**      **6631 East 47th Street**
**Indianapolis, IN 46226**

12.      The Mortgage was duly recorded on February 17, 1998, as Instrument No. 1998-0023667, in the Office of the Recorder of Marion County. A true and accurate copy of the Mortgage is attached hereto as Exhibit B.

13.      On or about January 26, 1998, the Borrowers, Daniel V. Cazares (deceased) and Julia Cazares (deceased) executed and delivered to Transamerica HomeFirst, Inc., an Adjustable Rate Second Note, which Note is attached hereto as Exhibit C.

14.      Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, Daniel V. Cazares (deceased) and Julia Cazares (deceased), executed and delivered to the Secretary of Housing & Urban Development, a second mortgage and Home Equity Conversion Mortgage, attached hereto as Exhibit D, recorded on February 17, 1998 in Instrument #1998-0023668.

15.      On or about September 9, 2008, Financial Freedom Senior Funding Corporation, successor by merger with HomeFirst, Inc., (formerly known as Transamerica HomeFirst, Inc.), conveyed and assigned its interest in the Note and Mortgage to the Secretary of Housing & Urban Development, attached hereto as Exhibit E, recorded on October 7, 2008, as Instrument #2008-0116820.

16.      The Borrower, Daniel V. Cazares, died on March 19, 2007, leaving any interest that he had in the subject real estate to his heirs at law. A copy his obituary is attached hereto as Exhibit F.

17.     The Borrower, Julia Cazares, died on September 30, 2015, leaving any interest that she had in the subject real estate to her heirs at law. A copy her Death Certificate is attached hereto as Exhibit G.

18.     Plaintiff is the holder/owner of the Note and Mortgage.

19.     Borrowers, Daniel V. Cazares (deceased) and Julia Cazares (deceased), defaulted under the terms of the Note and Mortgage, and/or otherwise defaulted in regard to their obligations to Plaintiff under the provisions of the Note and Mortgage and the entire indebtedness of the Borrowers is now due.

20.     All conditions precedent to the assertion of this cause of action against the said Borrowers and Defendants have been satisfied and/or has occurred.

21.     The Defendants, other than the Borrowers designated in this action, purport to have an interest in the real estate described in Exhibit B, and are named as Defendants to answer the extent of their interest.

22.     Marion County, Indiana may claim to have liens on the subject real estate in real property taxes either delinquent or not yet due and payable – or both.   Because the liens are not subject to foreclosure in this suit, however, Marion County has not been joined in this suit, and the real estate shall remain subject to said liens subsequent to the foreclosure sought herein.

23.     The City of Indianapolis, Indiana may claim to have liens on the subject property in regard to assessed delinquent municipal sewer obligations.   Because the liens are not subject to foreclosure in this suit, however, that entity has not been joined in this suit, and the real estate shall remain subject to said liens subsequent to the foreclosure sought herein.

**WHEREFORE**, Plaintiff respectfully prays that the Court:

A.      Declare Plaintiff's Real Estate Mortgage to be a valid, first and subsisting lien on the real estate superior to all claims, liens or interests asserted or which may be asserted against the real estate by the named Defendants, unknown heirs, devisees, legatees, successors, executors, administrators, personal representatives, guardians, trustees, receivers, grantees and lessees of Daniel V. Cazares (deceased); the unknown heirs, devisees, legatees, successors, executors, administrators, personal representatives, guardians, trustees, receivers, grantees and lessees of Julia Cazares (deceased); Anna Scott; and unknown owners and non-record claimants;

B.      Enter an Order foreclosing the Real Estate Mortgage of Plaintiff on the real estate and foreclosing and barring all of the Defendants' equity of redemption and interest in the real estate and directing the sale of the real estate pursuant to applicable law in order to pay the judgment of Plaintiff, with the proceeds of said sale to be first applied to the indebtedness of the Plaintiff secured by the Real Estate Mortgages hereby foreclosed, and with any then-remaining overplus paid to the Clerk of the Court to be disposed of as the Court shall direct;

C.      Provide the Plaintiff with such other and further relief as is just and proper in the premises.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:     *s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney
Office of the United States Attorney
10 West Market, Suite 2100
Indianapolis, Indiana 46204

## ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

**JANUARY 26, 1998**

**PROPERTY ADDRESS**

6631 E. 47TH STREET
INDIANAPOLIS, INDIANA 46226
MARION COUNTY

### 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means Transamerica HomeFirst, Inc. and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated JANUARY 26, 1998 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on JANUARY 28, 2077. Interest will be charged on unpaid principal at the rate of SIX AND THIRTY EIGHT HUNDREDTHS percent (6.38%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

**(B) Place**
Payment shall be made at 505 Sansome Street, San Francisco, California 94111 or any such other place as Lender may designate in writing by notice to Borrower.

**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of assignment.

### 5. INTEREST RATE CHANGES

**(A) Change Date**
The interest rate may change on the first day of MARCH, 1998 and on that day of each succeeding month. "Change Date" means each date on which the interest rate could change.

**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of one and twenty hundredths percentage points (1.20%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

# EXHIBIT A

-1-

**(D) Limits on Interest Rate Changes**
The interest rate will never increase above SIXTEEN AND THIRTY EIGHT HUNDREDTHS PERCENT (16.38%).

**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**
A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that porion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be created to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:

    (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

    (ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

**(B) Other Grounds**
Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

    (i)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a least one other Borrower;

    (ii)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii)    An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8.  WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11.  RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

    (i)    This Note is assigned to the Secretary; or

    (ii)   The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii)   Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____       1/26/98
DANIEL V. CAZARES (Borrower)                Date

_____       1/26/98
JULIA CAZARES (Borrower)                    Date

All right, title and interest of the undersigned to the within credit instrument is hereby assigned to the secretary of Housing and Urban Development of Washington, D.C., his/her successors and assigns. Financial Freedom Senior Funding Corporation

Carol Noto

Vice President

PAY TO THE ORDER OF

WITHOUT RECOURSE
TRANSAMERICA HOMEFIRST, INC.

CYNTHIA L. ENGDAHL
VICE PRESIDENT

-3-



## MORTGAGE
## (HOME EQUITY CONVERSION)

Record and Return to:

Transamerica HomeFirst, Inc.
505 Sansome Street
11th Floor
San Francisco, California 94111

---

**State of Indiana**   **ADJUSTABLE RATE MORTGAGE**

THIS MORTGAGE ("Security Instrument") is given on JANUARY 26, 1998. The Mortgagor is DANIEL V. CAZARES AND JULIA CAZARES, HUSBAND AND WIFE, whose address is 6631 E. 47TH STREET, INDIANAPOLIS, INDIANA 46226 ("Borrower"). This Security Instrument is given to Transamerica HomeFirst, Inc., which is organized and existing under the laws of the State of California, and whose principal office address is 505 Sansome Street, San Francisco, California 94111 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of $87,000.00; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on JANUARY 28, 2077. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in MARION County, Indiana:

> The real property located at the address 6631 E. 47TH STREET, INDIANAPOLIS, INDIANA 46226, in the county of MARION, state of INDIANA, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.
**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender,

# EXHIBIT B

-1-

unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer

-2-

for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

        (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred an no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

    **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:

        (i)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii)   For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii)  An obligation of the Borrower under this Security Instrument is not performed.

    **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this Paragraph 9(a)(ii) or (b) occur.

    **(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

        (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

        (ii)   Pay the balance in full; or

        (iii)  Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

        (iv)  Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgements.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgement against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. First Lien Status**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this

Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

    (i)    This Security Instrument is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

    (ii)    Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument, Lender shall give notice to Borrower in the manner provided in Paragraph 16. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of SIX AND THIRTY EIGHT HUNDREDTHS percent (6.38%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding

principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new index and index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on MARCH, 1998, and on the first day of ____ and on that day of each succeeding year, or __X__ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

____ Annually Adjusting Variable Rate Feature

__X__ Monthly Adjusting Variable Rate Feature - The Calculated Interest Rate will never increase above SIXTEEN AND THIRTY EIGHT HUNDREDTHS PERCENT (16.38%).

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Investment without charge to Borrower.

**24. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check all riders that are applicable].

_ Condominium Rider                    _ Planned Unit Development Rider

_ Shared Appreciation Rider            _ Other -

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

_____

Signature _____
DANIEL V. CAZARES (Borrower)

_____
JULIA CAZARES (Borrower)

-----------------------------------[Space Below Line For Acknowledgment]-------------------------------------

**State of Indiana**                                                                 County ss: MARION

On this ___26th___ day of ___JANUARY 1998___, before me, the undersigned, a Notary Public in and for said County, personally appeared DANIEL V. CAZARES and JULIA CAZARES, and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.                      _Rebecca Bush_

                                                                              Notary Public

My commission expires:

TransAmerica Home First, Inc                    REBECCA K BUSH
                                                NOTARY PUBLIC STATE OF INDIANA
                                                    HANCOCK COUNTY
                                                MY COMMISSION EXP  MAY 18,2001



-8-

## EXHIBIT A

Exhibit A to the Mortgage given on JANUARY 26, 1998, by DANIEL V. CAZARES AND JULIA CAZARES, HUSBAND AND WIFE ("Borrower") to Transamerica HomeFirst, Inc. ("Lender"). The Property is located in the county of MARION, state of INDIANA, described as follows:

### Description of Property

Lot 147 in Brookhaven, Second Section, an Addition to the Town of Lawrence, the plat of which is recorded in Plat Book 28, at pages 453 and 454, in the Office of the Recorder of Marion County, Indiana.



## ADJUSTABLE RATE SECOND NOTE
### (HOME EQUITY CONVERSION)

**JANUARY 26, 1998**

**PROPERTY ADDRESS**

6631 E. 47TH STREET
INDIANAPOLIS, INDIANA 46226
MARION COUNTY

### 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated JANUARY 26, 1998 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made by Lender under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on JANUARY 28, 2077. Interest will be charged on unpaid principal at the rate of SIX AND THIRTY EIGHT HUNDREDTHS percent (6.38%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or the "Second Security Instrument". The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

### 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

**(B) Place**
Payment shall be made at the Office of the Housing-FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, S.W., Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.

**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

### 5. INTEREST RATE CHANGES

**(A) Change Date**
The interest rate may change on the first day of MARCH, 1998 and on that day of each succeeding month. "Change Date" means each date on which the interest rate could change.

**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of one and twenty hundredths percentage points (1.20%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

# EXHIBIT C



**(D) Limits on Interest Rate Changes**
The interest rate will never increase above SIXTEEN AND THIRTY EIGHT HUNDREDTHS PERCENT (16.38%).

**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate.  The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**
A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice.  If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty.  Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that porion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance.  A Borrower may specify whether a prepayment is to be created to that portion of the principal balance representing monthly payments or the line of credit.  If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:

    (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

    (ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

**(B) Other Grounds**
Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

    (i)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

    (ii)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii)    An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.





**(D) Trusts.**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO FIRST NOTE

**(A) Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

**(B) Relationship of Secretary Payments to First Note**
Payments made by the Secretary shall be included in the debt due under this Note unless:

    (i)     The First Note is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

**(C) Notice of Interest Rate Adjustments**
Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Daniel V. Cazares_ _____   1/26/98
DANIEL V. CAZARES (Borrower)                                          Date

_Julia Cazares_ _____   1/26/98
JULIA CAZARES (Borrower)                                                Date

SECOND MORTGAGE
(HOME EQUITY CONVERSION)



Record and return to:
Transamerica HomeFirst, Inc.
505 Sansome Street
11th Floor
San Francisco, California 94111

State of Indiana                    **MORTGAGE**

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument" is given on JANUARY 26, 1998.   The mortgagor is DANIEL V. CAZARES AND JULIA CAZARES, HUSBAND AND WIFE, whose address is 6631 E. 47TH STREET, INDIANAPOLIS, INDIANA 46226 ("Borrower").  This Security Instruments given to the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, S.W., Washington, DC 20410 ("Lender") or ("Secretary").  Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement").  The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note").  This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of $87,000.00; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on JANUARY 28, 2077. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in MARION County, Indiana:

The real property located at the address 6631 E. 47TH STREET, INDIANAPOLIS, INDIANA 46226, in the county of MARION, state of INDIANA, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument").  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
**1. Payment of Principal and Interest.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.**  Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging

-1-

02/17/98 12:40PM JOAN H. ROMERIL MARION CTY RECORDER  JSH   23.00 PAGES: 8
Inst # 1998-0023668

EXHIBIT D

such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary to the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    (a)    **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

        (i)    A Borrower dies and the Property is not the Principal residence of at least one surviving Borrower; or

        (ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

        (iii)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (iv)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (v)    An obligation of the Borrower under this Security Instrument is not performed.

    (b)    **Notice to Lender.** Borrower shall notify the Lender whenever any of the events listed in subparagraph (a) of this Paragraph 9(a)(ii)-(v) occur.

    (c)    **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii)-(v). Lender shall not have the right to commence foreclose until Borrower has had thirty (30) days after notice to either:

        (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

        (ii)    Pay the balance in full; or

        (iii)    Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

        (iv)    Provide the Lender with a deed in lieu of foreclosure.

    (d) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgements.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgement against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately proceeding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Second Lien Status**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower has also executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i)   The First Security Instrument is assigned to the Secretary; or

(ii)  The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

-4-

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

    (ii)    Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or under the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender · , or Lender's agent on Lender's written demand to the tenant.

Borrower has not 'executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph '19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument, Lender shall give notice to Borrower in the manner provided in Paragraph 16. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of SIX AND THIRTY EIGHT HUNDREDTHS percent (6.38%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new index and index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on MARCH, 1998, and on the first day of ___ and on that day of each succeeding year, or _X_ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

_____    Annually Adjusting Variable Rate Feature

_X_    Monthly Adjusting Variable Rate Feature - The Calculated Interest Rate will never increase above SIXTEEN AND THIRTY EIGHT HUNDREDTHS PERCENT (16.38%).

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Investment without charge to Borrower.

**24. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check all riders that are applicable].

_ Condominium Rider                                    _ Planned Unit Development Rider

_ Shared Appreciation Rider                            _ Other -

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

_____

Signature    _Daniel V Cazares_____
             DANIEL V. CAZARES (Borrower)

             _Julia Cazares_____
             JULIA CAZARES (Borrower)

-------------------------------[Space Below Line For Acknowledgment]-------------------------------
**State of Indiana**                                    County ss: MARION

On this 26th day of JANUARY 1998, before me, the undersigned, a Notary Public in and for said County, personally appeared DANIEL V. CAZARES and JULIA CAZARES, and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.              _Rebecca K Bush_____
My commission expires:                                           Notary Public

TransAmerica Home First, Inc

                                          REBECCA K BUSH
                                    NOTARY PUBLIC STATE OF INDIANA
                                          HANCOCK COUNTY
                                    MY COMMISSION EXP MAY 18,2001

## EXHIBIT A

Exhibit A to the Mortgage given on JANUARY 26, 1998, by DANIEL V. CAZARES AND JULIA CAZARES, HUSBAND AND WIFE ("Borrower") to the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, S.W., Washington, D.C. 20410, ("Lender" or "Secretary").  The Property is located in the county of MARION, state of INDIANA, described as follows:

Description of Property

Lot 147 in Brookhaven, Second Section, an Addition to the Town of Lawrence, the plat of which is recorded in  Plat Book 28, at pages 453 and 454, in the Office of the Recorder of Marion County, Indiana.

RECORDING REQUESTED BY:
Financial Freedom Senior Funding Corporation

AND WHEN RECORDED MAIL TO:
Financial Freedom Senior Funding Corporation
7700 W. Parmer Ln., Bldg. D
Austin, TX  78729
Attention: Rene Burnell

PREPARED BY: Rene Burnell
Address: 7700 W. Parmer Ln., Bldg. D
        Austin TX  78729
Telephone Number: (512) 506-6880

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION. SUCCESSOR BY MERGER WITH HOMEFIRST, INC. (formerly known as Transamerica HomeFirst, Inc.) (herein "Assignor") a California Corporation, whose address is 353 SACRAMENTO STREET, SAN FRANCISCO, CA  94111, does hereby grant, sell, assign, transfer and convey, unto the SECRETARY OF HOUSING AND URBAN DEVELOPMENT WASHINGTON D.C. (herein, "Assignee"), a certain MORTGAGE dated JANUARY 26, 1998, and executed by DANIEL V. CAZARES AND JULIA CAZARES, HUSBAND AND WIFE, to and in favor of TRANSAMERICA HOMEFIRST, INC, and recorded on FEBRUARY 17, 1998, as DOCUMENT NO. 1998-0023667 in MARION County, State of INDIANA.

Property Address: 6631 E 47TH STREET, INDIANAPOLIS, INDIANA 46226

WITHOUT RECOURSE OR WARRANTY, except that the undersigned hereby warrants that: (a) no act or omission of the undersigned has impaired the validity and priority of the said security instruments; (b) the security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the assignee hereunder; (c) the sum of $87,000 together with the interest from the 26TH day of JANUARY, 1998, at the rate of 6.38%, computed as provided in the credit instrument, is actually due and owing under the said credit instrument and (d) the undersigned has a good right to assign the said security and credit instruments."

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of MORTGAGE on September 9, 2008.

FINANCIAL FREEDOM SENIOR FUNDING CORPORATION

By: CAROL NORTON
Title: FIRST VICE PRESIDENT

STATE OF TEXAS
COUNTY OF TRAVIS
On September 9, 2008, before me, ELAINE MUCHOW, a notary public in and for TRAVIS County, in the State of TEXAS, personally appeared CAROL NORTON, FIRST VICE PRESIDENT of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, C/O 7700 W PARMER LN, BUILDING D, AUSTIN, TX  78729, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument.
WITNESS my hand and official seal

Signature   Elaine Muchow
           Elaine  Muchow

ELAINE MUCHOW
MY COMMISSION EXPIRES
October 30, 2011

EXHIBIT E

## EXHIBIT A

Exhibit A to the Mortgage given on JANUARY 26, 1998, by DANIEL V. CAZARES AND JULIA CAZARES, HUSBAND AND WIFE ("Borrower") to Transamerica HomeFirst, Inc. ("Lender"). The Property is located in the county of MARION, state of INDIANA, described as follows:

Description of Property

Lot 147 in Brookhaven, Second Section, an Addition to the Town of Lawrence, the plat of which is recorded in Plat Book 28, at pages 453 and 454, in the Office of the Recorder of Marion County, Indiana.

OBITUARIES | FUNERAL HOMES | SEND FLOWERS | NEWS & ADVICE | MEMORIALS

**RESOURCES**

More Obituaries for Daniel Cazares

Looking for an obituary for a different person with this name?

Cazares Records (93)

# Daniel V. Cazares

Obituary

Daniel Valerio Cazares 82, Indianapolis, died March 18, 2007. He was born April 16, 1924 in Ft. Worth, TX, the son of Manual Lara and Susie (Valerio) Cazares. Mr. Cazares retired in 1985 as a machine operator at Ford Motor Co. after 24 years of service. He was a member and past master of Monument Lodge, F & A M #657 and a U.S. Navy veteran of WW II. Survivors: Wife of 60 years, Julia (Flores) Cazares; sons, Benjamin and Jimmy Cazares; daughters, Anna Marie Scott and Debbie C. Henderson; seven grandchildren and 10 great grandchildren. Services: 2 p.m. Friday, March 23rd at Flanner & Buchanan Washington Park East Funeral Center. Visitation: 4 to 8 p.m. Thursday, March 22nd at the funeral center. Entombment: Washington Park East Cemetery. www.flannerbuchanan.com

Published in the The Indianapolis Star on Mar. 21, 2007



**Did You Know:** TAP YOUR AGE:
Denver, CO: If You Have No Tickets In 3 Years, We Hope You Know This Genius Tip

 18-25
 26-35
36-45
 46-55
 56-65
Over 65

CALCULATE COVERAGE

**RESOURCES**

• Send Funeral Flowers
• Donate to Charity

**FIND ADVICE & SUPPORT**

• Funeral Etiquette
• Grief Support Groups

‹ BACK TO TODAY'S OBITUARIES

Sponsored


Please consider a donation in memory your loved one.

WOUNDED WARRIOR PROJECT   DONATE

**MORE INFORMATION**

Funeral Et
Expert advice do and say wh someone dies

EXHIBIT F

11/18/2015  10:40       3173567976                    ANTHONY CAMPO                              PAGE  04/04

# INDIANA STATE DEPARTMENT OF HEALTH
## CERTIFICATE OF DEATH - RESUBMIT

Local No. 007261   EDR No. 000000471684   State No. 046490

| 1. Decedent's Name (First, Middle, Last) | | | 1a. (Maiden Name, if female) | 2. Sex | 3. Time Of Death | 4. Date Of Death (Month/Day/Year) |
|---|---|---|---|---|---|---|
| JULIA FLORES CAZARES | | | MONTEZ | FEMALE | 06:10AM | 09/30/2015 |

| 5a. Social Security Number | 6a. Age - Yrs | 6b. Under 1 Year | 6c. Under 1 Month | 6d. Under 1 Day | 6e. Under 1 Hour | 7. Date of Birth (Month/Day/Year) | 8. Birthplace (City and State or Foreign Country) |
|---|---|---|---|---|---|---|---|
| | 71 | 55 | Months | Days | Hours | Minutes | BEASLEY, TX |

9. Was House Called Before?  10. If Death Occurred in a Hospital: ☐ Yes ☒ No ☐ Unknown  ☐ Inpatient ☐ Emergency Department Outpatient ☐ Dead on Arrival  If Death Occurred Somewhere Other Than A Hospital:  ☐ Hospice Facility  ☒ Decedent's Home  ☐ Nursing Home/Long Term Care Facility  ☐ Other (Specify)

11. Facility Name (If Not Institution, Give Street and Number)
6631 EAST 47TH STREET

| 12. City Of Town, State And Zip Code | | 13. County Of Death | 14. Marital Status At Time Of Death |
|---|---|---|---|
| INDIANAPOLIS, IN, 46226 | | MARION | ☐ Married, But Separated ☐ Divorced ☐ Married ☒ Widowed ☐ Never Married ☐ Unknown |

| 15. Surviving Spouse's Name | | 15a. (If Wife Give Maiden Last Name) | 16. Decedent's Usual Occupation | 17. Kind Of Business/Industry |
|---|---|---|---|---|
| | | | HOMEMAKER | OWN HOME |

| 1b. Residence State | 18a. County | 18b. City Or Town | | |
|---|---|---|---|---|
| INDIANA | MARION | INDIANAPOLIS | | |

| 18c. Street And Number | | | | 18d. Apt. No. | 18e. Zip Code | 18f. Inside City Limits? |
|---|---|---|---|---|---|---|
| 6631 EAST 47TH STREET | | | | | 46226 | ☒ Yes ☐ No |

| 19. Decedent's Education | 20. Decedent Of Hispanic Origin? | 21. Decedent's Race |
|---|---|---|
| HIGH SCHOOL GRADUATE OR GED COMPLETED | SPANISH | SPANISH |

| 22. Father's Name (First, Middle, Last) | 23. Mother's Name (First, Middle, Last) | 23a. Mother's Maiden Last Name |
|---|---|---|
| MICHAEL MONTEZ | MARIA MONTEZ | UNKNOWN |

| 24. Informant's Name | 24a. Relationship To Decedent | 24b. Mailing Address (Street And Number, City, State, Zip Code) |
|---|---|---|
| ANNA SCOTT | DAUGHTER | 6631 EAST 47TH STREET, INDIANAPOLIS, IN 46226 |

25. Place Of Disposition
26a. Method Of Disposition  ☐ Burial ☐ Cremation ☐ Donation ☒ Entombment  ☐ Removal From State  ☐ Other (Specify)  26b. Place Of Disposition (Name Of Cemetery, Crematory, Other Place)  26c. Location - City, Town, And State
WASHINGTON PARK EAST CEMETERY      INDIANAPOLIS, IN

27. Was Cremation Contacted?  ☐ Yes ☒ No  27f. Name And Complete Address Of Funeral Facility
LEGACY CREMATION & FUNERAL SERVICES - LAWRENCE, 5215 N. SHADELAND AVE, INDIANAPOLIS, IN 46226   27f. Funeral Home License Number FH4060001S

27b. Signature Of Indiana Funeral Service Licensee  27c. License Number (Of Licensee)
CARRIE ELLEN GEE, BY ELECTRONIC SIGNATURE    FD20400015

Cause Of Death (See Instructions And Examples)
28. Part I. Enter The Chain Of Events - Diseases, Injuries, Or Complications - That Directly Caused The Death. Do Not Enter Terminal Events, Such As Cardiac Arrest, Respiratory Arrest, Or Ventricular Fibrillation Without Showing The Etiology. Do Not Abbreviate. Enter Only One Cause On A Line. Add Additional Lines If Necessary.   Approximate Interval: Onset To Death.

| Immediate Cause (Final Disease Or Condition Resulting In Death) | A. ACUTE RENAL FAILURE | 4 DAYS |
|---|---|---|
| Sequentially List Conditions, If Any, Leading To The Cause Listed On Line A. Enter The Underlying Cause (Disease Or Injury That Initiated The Events Resulting In Death) Last. | B. CIRRHOSIS | 1 YEAR |
| | C. CHRONIC CONGESTIVE HEART FAILURE SECONDARY TO CORONARY ARTERY DISEASE | 20 YEARS |
| | D. TYPE II DIABETES | 30 YEARS |

Part II. Enter Other Significant Conditions Contributing To Death But Not Resulting In The Underlying Cause Given In Part I.   29. Was An Autopsy Performed? ☐ Yes ☒ No   30. Were Autopsy Findings Available To Complete The Cause Of Death? ☐ Yes ☐ No

| 33. Did Tobacco Use Contribute To Death? | 31. If Female: | 32. Manner Of Death |
|---|---|---|
| ☐ Yes ☐ Probably ☒ No ☐ Unknown | ☐ Not Pregnant Within Past 1 Yr | ☒ Natural ☐ Homicide ☐ Accident ☐ Pending Investigation ☐ Suicide ☐ Could Not Be Determined |

| 34. Date Of Injury (Month/Day/Year) | 35. Time Of Injury | 36. Place Of Injury (E.G., Decedent's Home, Construction Site, Restaurant, Wooded Area) | 37. Injury At Work? ☐ Yes ☐ No |
|---|---|---|---|

| 38. Location Of Injury - State | 38a. City Or Town | 38b. Street & Number | 38c. Apt. No. | 38d. Zip Code |
|---|---|---|---|---|

39. Describe How Injury Occurred   40. If Transportation Injury, Specify: ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify)

| 42. Signature Of Person Certifying Cause Of Death | 42i. Certifier (Check Only One) | |
|---|---|---|
| LEEANNE MARIE NAZER, BY ELECTRONIC SIGNATURE | ☒ Certifying Physician ☐ Coroner ☐ Health Officer | |

| 43. Name, Address And Zip Code Of Person Certifying Cause Of Death: | 44. License Number | 45. Date Certified |
|---|---|---|
| LEEANNE MARIE NAZER, 8757 WESTPOINT DRIVE, SUITE 100, INDIANAPOLIS, IN 46256 | 01036739A | 10/01/2015 |

46. Additional Funeral Service Provider   47. Title:

| 48. Signature Of Local Health Officer: | 49. For Registrar Only - Date Filed (Month/Day/Year) |
|---|---|
| VIRGINIA A. CAINE, VIA ELECTRONIC SIGNATURE | OCT 06 2015 |

AMENDMENT TO CERTIFICATE OF DEATH (ENTRY OR ORIGINAL)

49i. (10/01/2015)
24i. ANNA CLARK

EXHIBIT G

State Form 50092  ATTENTION: ESTATE. This Social Security # is being requested by a state/local agency in order to further administration...

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| HUD Field Office |
|---|

| To | HUD/OFFICE OF GENERAL COUNSEL |
|---|---|

| 1. FHA Case Number | 2. Account Number |
|---|---|
| | |

| 3. Mortgagor/Owner | 4. Social Security Number |
|---|---|
| DANIEL CAZARES | |

| 5. Co-Mortgagor | 6. Social Security Number |
|---|---|
| JULIA CAZARES | XXX-XX-XXXX |

| 7. Name of original mortgagor if different from above | 8. Property Address |
|---|---|
| | 6631 E 47TH ST INDIANAPOLIS IN 46226 |

## Part 1.  General Account Information

| Original Mortgage Amount | Unpaid Principal Balance | Escrow Balance | Interest Rate | Term |
|---|---|---|---|---|
| | $28,875.91 | | 3.130% | |

| Type of mortgage | Last payment applied | Date | Date of oldest unpaid interest installment |
|---|---|---|---|
| HECM | | | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Please Note:  The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.**

## Part 2.  Assumption Information / Bring Current Information

Other mortgage is to be assumed:  1.  Remit certified funds to bring account current; 2.  Provide a copy of the conveyance document; 3.  Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4.  Provide verification of Hazard Insurance coverage.

**Bring Current Amount**

| | |
|---|---|
| Principal | $28,875.91 |
| Interest | $36,224.77 |
| Tax Escrow Required | |
| Service Charge | $9,100.00 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $7,116.51 |
| Interest on Advances | |
| Total to Bring Current as of:   08/22/2019 | $81,317.19 |

**Current Monthly Payment**

| | |
|---|---|
| Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment | |

See back of page if mortgage is 235

## Part 3.  Payoff Information

| | |
|---|---|
| Principal Balance | $28,875.91 |
| Interest Due | $36,224.77 |
| Service Charge | $9,100.00 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $7,116.51 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount as of:   08/22/2019 | $81,317.19 |
| Per Diem Service Charge | |
| Per Diem Interest | $8.09 |

| Prepared by   ASHANTA TUCKER | Title   CASH MANAGEMENT | Date   08/22/2019 |
|---|---|---|

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:**  HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012;  31 U.S.C. 3729, 3802)

| Certified by   DAVID DAVIS | Title   CASH MANAGEMENT | Date   08/22/2019 |
|---|---|---|

form HUD-698 (1/89)

**Sensitive Information:** The information collected on this form is considered sensitive and is protected by the Privacy Act. The Privacy Act requires that these records be maintained with appropriate administrative, technical, and physical safeguards to ensure their security and confidentiality. In addition, these records should be protected against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom the information is maintained.

**If the Mortgage is receiving subsidy**

Anniversary date _____

Date of last recertification _____

Monthly subsidy _____

Mortgagor's payment _____

Full mortgage payment _____

**Affidavit as to Status of Account**

State of _OKLAHOMA_____

County of _OKLAHOMA_____

On this _22ND____ day of (mm/yyyy) _08/2019_____ ,

personally appeared before me, the undersigned attesting officer, _HEATHER CAMPBELL_____ ,

who being sworn on oath, says that he/she is the _LOAN SERVICING MANAGER/ATTORNEY-IN-FACT_____

of the Department of Housing and Urban Development, a duly constituted agency of the United States of America, that he/she is duly authorized to make this affidavit; that the foregoing statement was prepared from the books and records of the Department of Housing and Urban Development on _08/22/2019_____ , and that affidavit has cusody of the said books and records and to the best of his/her knowledge and belief the foregoing statement correctly reflects the status of the account as of _08/22/2019_____ .

Sworn and Subscribed before me this _22ND_____ day of _08/2019_____ .

Notary Public

> ALISSA FRANCK
> Notary Public
> State of Oklahoma
> Commission #15003991 Exp: 04/30/23

# EXHIBIT H

form HUD-698 (1/89)

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff _____<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❒ 1  U.S. Government
       Plaintiff

❒ 2  U.S. Government
       Defendant

❒ 3  Federal Question
       *(U.S. Government Not a Party)*

❒ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance<br>❒ 120 Marine<br>❒ 130 Miller Act<br>❒ 140 Negotiable Instrument<br>❒ 150 Recovery of Overpayment & Enforcement of Judgment<br>❒ 151 Medicare Act<br>❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❒ 153 Recovery of Overpayment of Veteran's Benefits<br>❒ 160 Stockholders' Suits<br>❒ 190 Other Contract<br>❒ 195 Contract Product Liability<br>❒ 196 Franchise | **PERSONAL INJURY**<br>❒ 310 Airplane<br>❒ 315 Airplane Product Liability<br>❒ 320 Assault, Libel & Slander<br>❒ 330 Federal Employers' Liability<br>❒ 340 Marine<br>❒ 345 Marine Product Liability<br>❒ 350 Motor Vehicle<br>❒ 355 Motor Vehicle Product Liability<br>❒ 360 Other Personal Injury<br>❒ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❒ 365 Personal Injury - Product Liability<br>❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❒ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❒ 370 Other Fraud<br>❒ 371 Truth in Lending<br>❒ 380 Other Personal Property Damage<br>❒ 385 Property Damage Product Liability | ❒ 625 Drug Related Seizure of Property 21 USC 881<br>❒ 690 Other | ❒ 422 Appeal 28 USC 158<br>❒ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>❒ 820 Copyrights<br>❒ 830 Patent<br>❒ 840 Trademark<br><br>**LABOR**<br>❒ 710 Fair Labor Standards Act<br>❒ 720 Labor/Management Relations<br>❒ 740 Railway Labor Act<br>❒ 751 Family and Medical Leave Act<br>❒ 790 Other Labor Litigation<br>❒ 791 Employee Retirement Income Security Act | ❒ 375 False Claims Act<br>❒ 400 State Reapportionment<br>❒ 410 Antitrust<br>❒ 430 Banks and Banking<br>❒ 450 Commerce<br>❒ 460 Deportation<br>❒ 470 Racketeer Influenced and Corrupt Organizations<br>❒ 480 Consumer Credit<br>❒ 490 Cable/Sat TV<br>❒ 850 Securities/Commodities/ Exchange<br>❒ 890 Other Statutory Actions<br>❒ 891 Agricultural Acts<br>❒ 893 Environmental Matters<br>❒ 895 Freedom of Information Act<br>❒ 896 Arbitration |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | SOCIAL SECURITY | |
|---|---|---|---|---|---|
| ❒ 210 Land Condemnation<br>❒ 220 Foreclosure<br>❒ 230 Rent Lease & Ejectment<br>❒ 240 Torts to Land<br>❒ 245 Tort Product Liability<br>❒ 290 All Other Real Property | ❒ 440 Other Civil Rights<br>❒ 441 Voting<br>❒ 442 Employment<br>❒ 443 Housing/ Accommodations<br>❒ 445 Amer. w/Disabilities - Employment<br>❒ 446 Amer. w/Disabilities - Other<br>❒ 448 Education | **Habeas Corpus:**<br>❒ 463 Alien Detainee<br>❒ 510 Motions to Vacate Sentence<br>❒ 530 General<br>❒ 535 Death Penalty<br>**Other:**<br>❒ 540 Mandamus & Other<br>❒ 550 Civil Rights<br>❒ 555 Prison Condition<br>❒ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>❒ 462 Naturalization Application<br>❒ 465 Other Immigration Actions | ❒ 861 HIA (1395ff)<br>❒ 862 Black Lung (923)<br>❒ 863 DIWC/DIWW (405(g))<br>❒ 864 SSID Title XVI<br>❒ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>❒ 870 Taxes (U.S. Plaintiff or Defendant)<br>❒ 871 IRS—Third Party 26 USC 7609 | ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>❒ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

❒ 1  Original
       Proceeding

❒ 2  Removed from
       State Court

❒ 3  Remanded from
       Appellate Court

❒ 4  Reinstated or
       Reopened

❒ 5  Transferred from
       Another District
       *(specify)*

❒ 6  Multidistrict
       Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ❒ Yes  ❒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.**  Place an "X" in one of the six boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: